Judge Coalter,
delivered his opinion.
This is a suit in Chancery, instituted by the appellees, as distributees of John Bland, whose estate had been committed, in 1797, to Edmund Ruffin, then sheriff of Prince *495 George county, no one claiming to be administrator thereof. It appears from the bill, answer, exhibits, and the accounts taken in the cause, that John Maries, the deputy of Ruffin, transacted the whole business, made sale of the perishable property, and also of one of the slaves, by directions of the Court, during the continuance of his principal in office; and that after that, he retained and hired out the slaves, paid debts, &c. up to the close of the year 1803; and in 1807, rendered an account of all his transactions, before commissioners appointed by the County Court, except the price of the slave sold, which was not brought into that account. A balance appearing due on that account, and the price of the slave not being credited, this suit was brought, claiming not only that balance, but alledging that the slave was unnecessarily and illegally sold, and claiming him and his hires from the purchaser Drury Williams, who is made a defendant; claiming also, a settlement of the accounts, and a further discovery of assets, &c.
Edmund Ruffin had departed this life, before the institution of this suit, leaving George Ruffin, his only son, heir and legatee, and who was also administrator with his will annexed. He also had departed this life, and Thomas Cocke and John Jlvery, his executors, and the said Thomas Cocke, to whom administration de bonis non of Edmund Ruffin, had been committed, are made defendants in those characters, together with John Marks, the deputy aforesaid. John Marks died, during the progress of the suit, and it was first revived against Nathaniel Marks, his administrator, but he dying also, it was finally revived against Edward Marks, his administrator de, bonis non.
Cocke, the administrator de bonis non of Ruffin, and Williams only, having answered, and the case standing on conditional decrees served as to the others, an account was ordered to be rendered by the administrators of Ruffin and Marks, aforesaid, who appeared before the commissioner, when accounts were taken as aforesaid, shewing the whole sum to which the plaintiffs were entitled, to *496 have been received by Maries. On the return of this account, an order is made that Thomas Cocke, render an account of his administration of the estate of Edmund Ruffin’ before a commissioner, &c.; but on the next day, this order is set aside, and it is ordered, that Thomas Cocke and John Avery, render an account before a commissioner of the Court, of George Ruffin’s administration of the estate of Edmund Ruffin, and an account of their administration on the estate of George Ruffin; and that the said Thomas Cocke render an account of his administration de bonis non of the estate of Edmund Ruffin. The commissioner reported that he gave notice to the parties, &e. and that the defendant’s counsel had been authorised to instruct the commissioner to report specially, that they acknowledged a sufficiency of assets to be in their hands, to pay any demands which may be justly due against the estates of George Ruffin and Edmund Rtiffin.
The cause standing in this situation, came on to be finally heard between all the parties, when the Chancellor allowing, by consent of parties, a credit claimed by one of the exceptions, of ten guineas, and properly over-ruling the other exceptions, decreed a moiety of the balance found due, to be paid to each plaintiff, by the defendants, Thomas Cocke and John Avery, and that they pay to the plaintiffs their costs, &c. The effect of this decree was suspended, until the plaintiffs should enter into bond with surety, &e. payable to the defendants, to refund due proportions of any debts, which may hereafter appear against the estates of their testators, and the costs attending the recovery of such debts.
It has been objected, as ground to reverse this decree, that there ought to have been an administrator de bonis non of Bland, appointed, before the distributees can recover their shares of the estate, inasmuch as there is no person to represent that estate, and to whom they can give a refunding bond, in case debts should afterwards appear against it; and thus creditors would not be protected.
*497 1 shall consider this question, as if the sheriff was, to all intents and purposes, an administrator, as he is to be considered under the present law on this subject, without enquiring whether, under the law, as it stood at the time of these transactions, the sheriff was at all liable to creditors, except such as proved their claims before he settled his accounts, or delivered over the estate by order of Court, and so had no necessity to take a refunding bond.
Nor will I intimate any opinion on another question, which has heretofore been suggested to this Court, and is deemed worthy of full consideration, whenever it shall arise; and that is, whether an administrator da bonis non, can call the representative of a previous executor or administrator to an account, and recover from him any balance due from his testator or intestate to the estate.
If the bond in question is not necessary for the protection of the representatives of a sheriff, in such a case as the present, it can do no harm; and if it is as necessary as in ordinary cases of administration, then it is enough, in answer to this objection, to say, that since the statute of distributions, the representative of a deceased executor or administrator, has always been considered, both in England and here, as liable to the claims of legatees and distributees; which claim, by our laws, is moreover declared to be one of the first dignity. Creditors are secured by the express provisions of our statutes, which make the executors and administrators of a deceased executor or administrator liable to the creditors of the first testator or intestate, as their immediate testator or intestate was liable; and they may go against such executor or administrator, notwithstanding a recovery against them by the legatees or distributees. The executor or administrator is indemnified by the refunding bond, given to him by the legatee or distributee. There can be no objection, therefore, to the decree requiring a bond in this case, except that there appears to be a clerical error in the form of the condition.
*498 It is not important now to settle, another question, which has been made, to wit, whether the Court had power to order Ruffin to take possession of this estate, which had before been committed to his predecessor, inasmuch as since the act of 1806, ch. 15, and the new law of 1819, such decision cannot be important to the public. Nor is it important in this case, for be the law, as to the power of the Court, as it may, it could never be contended, that the sheriff, having consented to the various orders of Court made in relation to this estate, and, by his deputy Marks, acted under them, he is not in conscience bound to account therefor. He acted as sheriff de facto in the case, and it does not now lie in his mouth to say, he did not act also de jure; and in whatever way he acted, whether strictly in his official character as sheriff or not, he undertook to represent the estate under the orders of Court, and, by his deputy or agent, took the whole into his possession; and during his continuance in office, the perishable estate and slave were sold by order of Court as aforesaid. For the estate so received, he or his representatives are undoubtedly responsible, until it was delivered over by his agent to those entitled to it.
It has however been contended, that inasmuch as it clearly appears, that the whole of this estate was received by Marks, the deputy, the Court ought to have decreed in the first instance, that the payment should be made by his administrator, out of his estate, as all parties were before the Court, and in order to prevent circuity.
I have no doubt that such decree, if assented to by the plaintiffs, reserving liberty to them to resort to the Court, for ulterior and successive decrees against the other parties, should the same be necessary, would have been perfectly correct; and that, if this was not assented to by the plaintiffs, then it became the duty of the Court to decree between the defendants, that the administrator de bonis non of Marks, should pay to the defendant, against whom the plaintiffs recovered, not only the amount of that recovery, but all the costs of suit on both sides.
*499 A question, however, has suggested itself to the Court, as one perhaps of considerable importance to the practice; and that is, whether, as preparatory to such decree against the administrator de bonis non of Marks, the accounts of his administration ought to be ordered, as a matter of course; and whether we could therefore proceed properly to a final decree in the cause, or ought to send it back to have those accounts taken. And indeed, the orders for similar accounts in this cause, which seem (though that may not be the case) to have been made as matters of course, have turned our attention to this, subject also, as a general question. By these decrees, three administration accounts are directed to he settled, and if I am not right as to that of the estate of Marks, a fourth ought to have been directed, preparatory to a final decree in this cause. But in the three accounts directed to be settled, one only, to wit, that of the administrator de bonis non of Ruffin (against whom alone, the decree, in the first instance, ought to have been made, as will be seen hereafter) was, in the first place, of any consequence to the plaintiffs. But a decree de bonis may he preferred by a plaintiff, to the expense and delay of taking even one, much less three or four, long administration accounts, subject, moreover, to the risque of abatements by death, and having a personal decree finally against the executor or administrator. He may know that he can, at once, levy the money of the goods of the deceased, and get satisfaction; or such a decree may be all-important to him, that he may not be deprived of the priority of execution which such a decree might give him, over a suitor at law, for a debt of equal dignity, and who, during the delay in getting the accounts, may get judgment, and take the only assets left. In this case too, there would have been not only the expenso and delay of taking at least two accounts, in which the plaintiff would have felt little or no interest, but those accounts, when taken, would not avail the executor or administrator, and save other controversies and litigation, as to the respective estates, with other clai *500 mants. It would not be conclusive on such other claimant, not only because he was no party to the controversy; but because in fact, in all such cases, the party plaintiff in the controversy is only interested in shewing enough to pay himself, and that done, cares not how the residue of the accounts are taken. The great tax imposed upon the community, by the expenses of taking accounts before commissioners, and which is daily presented to this Court, calls aloud for retrenchment; and certainly, ought not to be unnecessarily increased. Even a report of a confession of assets in this case, cost the parties $ 250.
As a general question, therefore, I am clearly of opinion, that unless by the prayer of the bill for an account and discovery of assets, or some petition or special application to the Court by the plaintiff, or defence by a defendant, shewing that such account is required by the parties, or some of them, no such account ought to be decreed; but when the cause is, in other respects, ready, that the Court should proceed, at once, to a decree de bonis, &c.
As to the particular question under consideration, whether, as preparatory to a decree between defendants, the plaintiffs ought to be subjected either to the expense or delay of taking the account for the benefit of the defendant, seeking that decree, I think it ought not to be done, even on request, without the assent of the plaintiff, unless some very special circumstance, if such could exist, should render it proper. I see no ground, therefore, to send this cause back, for such account to be taken in the Court below; but I think this Court may proceed to a final decree here.
But the decree, as above hinted at, is further erroneous in this; it is against the executors of George Ruffin, instead of being, in the first instance, against the administrator de bonis non of Edmund Ruffin, with liberty to resort back to the Court, for a decree against the former, should that become necessary. Though George Ruffin was the administrator with the will annexed of Edmund Ruffin, he *501 was also his sole heir and legatee, and his representatives should not be called on, until the decree against the administrator de bonis non, who confesses assets enough, shall not avail the plaintiffs.
The decree is also erroneous in not dismissing the bill with costs, as to Drury Williams, who appears to have been very improperly made a party to the suit.
It must, therefore, be reversed, and a proper decree entered.
The other Judges concurred, and a decree entered according to the foregoing principles.*

 The President, absent.